Cox *v.* DRAINAGE DISTRICT No. 27, CRAIGHEAD COUNTY.

4-7691                                          187 S. W. 2d 887

Opinion delivered May 14, 1945.

756

*A. U. Tadlock* and *Barratt & Wheatley,* for appellant.

*Wallace Townsend* and *Roy Penix,* for appellee.

ROBINS, J.   Drainage District Number 27 of Craighead county, Arkansas, was organized by order of the county court in 1923, and within two years thereafter the construction work contemplated under the original plans was completed.   An assessment of benefits was made, bonds were issued to defray the cost of the improvement and an annual tax or percentage of the assessed benefits was levied.   These bonds have been paid and the last annual tax was collected in 1942.   The taxes heretofore collected did not exhaust the amount of the assessed benefits.

On January 12, 1945, the commissioners of the district filed in county court a petition setting forth that, in order to preserve and maintain the drainage ditches and drainage system constructed by the district, it was necessary to issue bonds of the district in the sum of $15,000, the proceeds of which should be used to "complete the work of improvement and in cleaning out, deepening and widening its drains, constructing culverts and openings where needed, and doing such other maintenance work as is necessary," and that, in order to pay the principal and interest of these bonds, it was necessary that a tax of one per cent. for the year 1945 and of two per cent. for the years 1946 to 1963, inclusive, be levied on the assessed benefits of the district.   Without requiring the giving of any notice of a hearing on this petition the county court entered an order granting the prayer of the commissioners' petition for the levying of the taxes, from which order an appeal to circuit court was taken by appellants, who are landowners of the district.

The circuit court found, *inter alia,* "that it was not necessary for the County Court Clerk or the Commis-

sioners of the district to give notice of the filing of the petition for the order of January 12, 1945; that it was not necessary to file plans and specifications covering the work to be done; that it was not necessary to file a petition by the landowners asking for the court order of January 12, 1945; that this is a proceeding to preserve the improvement of the district; that the unexhausted assessed benefits against the lands of the district are sufficient to pay for the proposed improvement, and funds are, therefore, available''; and affirmed the order of the county court. Appellants prosecute this appeal.

It was stipulated in the trial below: ''The district, comprising 8,686 acres of land and having total assessed benefits of $73,327.74, was established December 21, 1923, by order of the Craighead county court. In May, 1924, the district issued and sold bonds in the principal sum of $55,000 to procure money with which to make and pay for the improvements embraced within and contemplated by its unamended original plans and specifications. In 1934, the district issued and sold to the R.F.C. bonds in the principal sum of $18,500, and used the money thus procured to retire and discharge all of the then outstanding bonds and interest of the $55,000 issue of May, 1924. The $18,500 bond issue which was sold to the R.F.C. was paid and discharged in January, 1943, and prior thereto. All bonds, interest and other indebtedness incurred by the district in making and paying for the improvements embraced within and contemplated by the unamended original plans and specifications of the district have been fully paid and discharged. No annual taxes or levies have been extended on the tax books or collected by or for account of the district since 1942. All of the improvements embraced within and contemplated by the unamended original plans and specifications of the district were made and completed prior to the year 1925. No petition, signed by any landowners of the district, was at any time filed in the county court, asking that the improvements contemplated by the commissioners' petition and the county court's order thereon, dated January 12, 1945, be made or that the bonds therein mentioned be authorized to be issued and sold. No notice was pub-

lished before, on, or after January 12, 1945, in any newspaper informing the landowners of the district that the commissioners were going to ask or petition the county court for the order which it made on January 12, 1945, or that the commissioners had done so, or that such petition had been filed. Each of the appellants owns land within the district. No plans and specifications covering the improvements proposed to be made under the commissioners' petition of January 12, 1945, to the county court, and that court's order of January 12, 1945, thereon, were filed in the county court at any time. The commissioners had such plans and specifications made and filed in their own office, approved them, and have them on file in their own office. The commissioners circulated among the landowners of the district a petition, directed to and later filed in the office of the commissioners, but never in the county court, asking that the proposed improvements be made and bonds issued in the principal sum of $15,000 to pay the cost of the improvements. It is signed by 24 persons owning 1,500 acres of land within the district. It was not filed in the county court. When appellants and others heard of the circulation of the above mentioned petition, they then circulated among the landowners of the district a counter-petition, addressed to the county court, opposing the making of the proposed improvements. It is signed by 24 persons owning 2,896 acres of land within the district. It was not filed in the county court because appellants had no notice of the proceedings in the county court until sometime after they had been concluded and closed.''

For the doing of further work, after completion of the construction contemplated by the original plans, by the commissioners of drainage districts, two methods of procedure are afforded under Chapter 52 of Pope's Digest.

One method is provided by § 4481 of Pope's Digest (§ 22 of Act No. 279 of 1909) as follows: ''The district shall not cease to exist upon the completion of its drainage system, but shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from

obstructions and of extending, widening or deepening the ditches from time to time as it may be found advantageous to the district. To this end the commissioners may from time to time apply to the county court for the levying of additional taxes. Upon the filing of such petitions, notice shall be published by the clerk for two weeks in a newspaper published in each of the counties in which the district embraces lands, and any property owner seeking to resist such additional levy may appear at the next regular term of the county court and urge his objections thereto, and either such property owners or the commissioners may appeal from the finding of the county court.''

The other provision for further work, after completion of the original construction, is contained in §§ 4526, 4527, 4528 and 4529 of Pope's Digest (Act 203 of 1927, approved March 23, 1927). By § 1 of this Act (§ 4526, Pope's Digest) commissioners of drainage districts were given ''power, as hereinafter provided . . . to deepen or widen the drains in such district and to build additional laterals for the better drainage of its lands, and to borrow money for the purpose; to. that end they shall have power to issue negotiable bonds bearing a rate of interest not exceeding six per cent. per anum, for the purpose of securing funds with which to complete the work of improvement in such district, and of widening or deepening the ditches, adding laterals, and for maintenance of the ditches and levees; and they may secure the payment of such bonds by a pledge and a mortgage of the assessment of the benefits in such district, and of all reassessments thereof.''

By § 2 of this Act (§ 4527 of Pope's Digest) the commissioners were given power to reassess the benefits not oftener than once a year, the property owners being given the right to appeal from such reassessment.

Section 3 of this Act (§ 4528 of Pope's Digest) is as follows: ''If the commissioners shall have filed plans for additional work in the district, no proceeding shall be taken looking to a confirmation of the assessment of

benefits based thereon, until a petition has been filed with the county court, signed by a majority in numbers, acreage and value of the owners of land within the district, praying that the work as provided for in said plans shall proceed; and if no such petition is filed with the county court within one year after the filing of such assessment based upon the revised plans, the assessment of benefits shall be withdrawn by the commissioners and nothing further shall be done toward the carrying out of the revised plans. If such petition, purporting to be signed by a majority in value, number and acreage of the property owners, is filed within the time above limited, it shall be the duty of the county clerk to give notice by publication once a week for two weeks, the last insertion to be not less than ten days before the date fixed for the hearing, of a date when the county court will hear said petition and determine whether it is signed by the requisite majority, and whether the assessment of benefits which has been based thereon shall be sustained.'' After providing a form of this notice this section concludes: ''On the day named in said notice it shall be the duty of the county court to meet and to hear all persons who wish to be heard, and first to determine whether a majority in numbers, acreage or value of the landowners have petitioned for the doing of the work under the revised plans, and if it finds that such majority have signed the petition, then it shall hear all persons who filed written complaints against the assessment of benefits of their own land or the lands of anyone else, and determine whether the assessment of benefits is equitable and just, and to equalize the same. From the action of said court any party aggrieved, including the commissioners of the district, may appeal to the circuit court, but such appeal must be taken and perfected within thirty days; in the circuit court such proceedings shall be deemed matters of public interest and heard at the earliest possible moment, and appeals from its decisions must be taken and perfected within 30 days.''

The difference between these two statutory provisions for additional work in a drainage district, after completion of the original plans, is that under § 4481,

*supra,* the commissioners may keep the ditches clear from obstructions and widen or deepen same, and to defray the cost of this work may, after filing petition and after notice has been given, obtain an order of the county court levying additional taxes to be extended on the original assessment, if enough thereof remains available; while under Act 203, *supra,* the commissioners may not only deepen and widen the drains but may construct additional laterals and to defray the cost may make a new assessment, if necessary; but, in proceeding under Act 203, it is necessary that the consent of a majority in number, acreage or value of the landowners be reflected by a petition filed with the court. *Indian Bayou Drainage District* v. *Dickie,* 177 Ark. 728, 7 S. W. 2d 794.

To sustain the judgment of the lower court, it is argued that the clause "as hereinafter provided" in § 1 of Act 203, *supra* (§ 4526 of Pope's Digest), did not refer to the provisions of the succeeding sections of said Act 203, and that, therefore, the requirement that a petition, signed by a majority in number, acreage, or value of the landowners asking that the work be done, is not applicable. With this contention we cannot agree. We think that, under a reasonable interpretation of the whole Act, the power conferred on the commissioners by the first section of this Act (§ 4526 of Pope's Digest) is limited and controlled by the provisions of the subsequent sections of the same Act.

In the case of *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865, it was said: "It is insisted that the words 'as herein provided' in the third paragraph quoted from the amendment proposed as thirteen, have the effect to limit the requirements for adoption therein prescribed, which is 'a majority of the votes cast upon such measure,' to amendments initiated by the people, and that thirteen does not apply to amendments proposed and submitted by the General Assembly. This is contrary to reason and practice in legislation and not supported by the authorities. If such had been the intention, instead of the words used, the words 'this section' or 'this article' would have been substituted."

We conclude that the lower court erred in holding that the commissioners of this district had the power, under § 4526 of Pope's Digest, to do the work contemplated and to issue bonds in order to obtain funds with which to defray the costs thereof without the filing of the majority petition set forth in § 3 of Act 203 of 1927, *supra* (§ 4528 of Pope's Digest).

Although the lower court construed the petition of the commissioners as one filed in accordance with § 1 of Act 203 of 1927 (§ 4526 of Pope's Digest), this petition may (if there remains a sufficient amount of the original betterments—not heretofore ordered to be collected—to pay the cost of the contemplated work or the principal and interest of the bonds issued to defray same) properly be treated as having been filed under the provisions of § 4481 of Pope's Digest, which authorizes the doing of certain maintenance work without the requirement that a majority petition of the landowners be obtained. The facts in this case show that in reality only a maintenance project is involved here.

While under the provisions of § 4481, *supra,* there is no express authorization of an additional bond issue to obtain funds to pay for the work provided for therein, bonds may be issued for this purpose, under the power vested in the commissioners by § 4474 of Pope's Digest. This work provided for by § 4481, being merely to maintain the improvement, is in reality a part of the work originally contemplated by the landowners when the district was formed. The provisions of this section, however, may be invoked only for maintenance work and in case there remains uncollected enough of the original assessment to defray the cost of such work, or to pay the principal and interest of bonds issued to defray such cost. If additional laterals are to be constructed, or if an additional assessment of benefits is required to pay for the work or to pay the principal and interest of bonds issued to defray cost of the work, then, in either such event, the provisions of §§ 4526 to 4529, inclusive, of Pope's Digest, must be invoked.

But the judgment of the lower court cannot be sustained on the theory that this is a proceeding under § 4481 of Pope's Digest, because, as shown by the stipulation, no notice of the filing of the petition by the commissioners has ever been published by the clerk in accordance with the provisions of this section.

In any proceeding the object of which is to lay a tax burden on property, every statutory requirement for notice to the property owner must be observed. The purpose of such a requirement is to apprise the property owner of the contemplated tax and give him an opportunity to be heard. Where the law authorizing such a tax prescribes the giving of notice of any step in the proceeding to levy the tax, the publication of the notice is jurisdictional and is essential to the validity of the proceedings.

In the case of *Crane* v. *Siloam Springs*, 67 Ark. 30, 55 S. W. 955, Mr. Justice RIDDICK, speaking for this court, said: "It is important that this notice should be given in the manner and within the time prescribed by the statute; for it is in the nature of a warning to all owners of land in the district that a proceeding of that kind is on foot. So that if they wish to oppose the undertaking they may at the beginning, before public sentiment in regard thereto has become fixed, have an opportunity of discussing the question with other owners of land in the district, and, if the undertaking be unwise, perhaps defeat it by securing a majority in opposition to it. Failing in this, they can still be on guard, and watch the proceedings leading up to the assessment, to see that they are regular and in conformity with the law. We think, for these reasons, that the provision as to the time of the publication is for the benefit and protection of the landowners of the district, and must therefore be treated as mandatory. 13 Enc. Pl. & Pr. 307, and cases cited." Other cases in which giving of notice provided by statute in similar proceedings was held essential are: *McRaven* v. *Clancy*, 115 Ark. 163, 171 S. W. 88; *Paschal* v. *Swepston*, 120 Ark. 230, 179 S. W. 339; and *Smith* v. *Lawrence*, 175 Ark. 712, 300 S. W. 386,

The judgment of the lower court is reversed and this cause is remanded with directions to the lower court to enter an order, setting aside its previous order herein, and directing the county court to set aside the order made by it herein on January 12, 1945, and, if the procedure outlined by § 4481 of Pope's Digest is to be followed, then to ascertain whether there remains a sufficient amount of the original assessment of benefits, not heretofore ordered to be collected, to defray the costs of the proposed work, or the principal and interest of bonds issued to pay the same, and, if so, the county court to proceed to hear said petition and make order thereon in the manner prescribed by said § 4481, after the notice prescribed in said section has been given; and, if the county court finds that there is not a sufficient amount of the original assessed benefits remaining to defray the cost of said work, or the principal and interest of the bonds to be issued to pay for the work, then proceedings on said petition may, if the parties are so advised, be had in accordance with the provisions of §§ 4526, 4527, 4528 and 4529 of Pope's Digest.