WALKER *v.* ROLAND DRAINAGE DISTRICT.

4-8336                                                    207 S. W. 2d 319

Opinion delivered January 12, 1948.

*Horace Chamberlain,* for appellant.

*Sherrill, Cockrill & Wills,* for appellee.

Ed. F. McFaddin, Justice. This appeal presents a direct attack by a property owner on certain proceedings affecting the appellee district.

A brief review of the history of the district is necessary to understand the issues presented in this appeal. The district was organized in 1935 under the alternate levee and drainage statutes (§§ 4455, *et seq.,* Pope's Digest). Even though the appellee was named a "drainage district," its purpose was to construct a levee to protect lands from overflows, and this is permissible for such a district (see § 4489, Pope's Digest). The district comprised 7,086 acres possessed by 89 owners. The levee constructed in 1936 was found to afford inadequate protection; and in each of the years of 1938, 1941 and 1943, additional work was done on the levee. The benefits assessed in 1936 proved insufficient to finance the additional work; and in 1943 additional benefits were assessed. In 1945, a flood destroyed a portion of the levee, so that further work was imperative. The United States Corps of Engineers agreed to construct a new "set-back" levee if the landowners would provide the right of way.

Then came the proceedings here involved. In 1946, a map was made showing that 4,186 acres (of the original 7,086 acres in the district in 1936) would be protected by the new set-back levee. Thereupon, a petition, signed by the owners of 2,507 acres (of the 4,186 acres to be protected) was filed in the county court under the provisions of §§ 4526-28, Pope's Digest. The petition prayed that the plans be revised, so that there would be a reassessment of benefits on the said 4,186 acres. The county court found that the petition was signed by a majority in acreage, and granted the order, which we refer to as the "revised plans order."[1] Appellant, as a property owner of a portion of the 4,186 acres affected (and also of other lands in the district) duly appealed to the circuit court.

An assessment of benefits (based on the revised plans) was filed. The county court confirmed the as

---

[1] We secure these words "revised plans" from § 4528, Pope's Digest.

sessed benefits so filed, and made an order for the annual collection of 5% of the benefits. Appellant duly appealed to the circuit court from the said "benefits and levy order."

The circuit court affirmed the county court's "revised plans order," and also the county court's "benefits and levy order;" and appellant has appealed to this court.[2] The question now before us may be summarized: Did the 1946 petition—signed by the owners of 2,507 acres—contain a majority?

It is admitted by all parties that in the matters here involved the appellee has proceeded under the provisions of § 4526, *et seq.,* Pope's Digest, which sections are a part of Act 203 of 1927. This act has been before this court in several cases; some of them are: *Indian Bayou District* v. *Dickie,* 177 Ark. 728, 7 S. W. 2d 794; *Grady District* v. *Free,* 178 Ark. 346, 10 S. W. 2d 854; *St. L. S. F. Ry. Co.* v. *Sub-district No. 1,* 179 Ark. 567, 17 S. W. 2d 299; *Berry* v. *Cousart Bayou District,* 181 Ark. 974, 28 S. W. 2d 1060; and *Cox* v. *Drainage District,* 208 Ark. 755, 187 S. W. 2d 887. In *Cox* v. *Drainage District, supra,* we held that, after the improvement originally contemplated had been made, if a new or additional improvement not in the nature of maintenance should be undertaken, then—under Act 203 of 1927—there must be presented to the proper court a petition asking for the new work, and said petition must be signed by a majority in value, acreage or number of the landowners in the district. In *Indian Bayou District* v. *Dickie, supra,* we held that the petition would be sufficient if it contained a majority of acreage or valuation or owners.

It is not contended that the 1946 petition here involved was signed by a majority in value or acreage or owners of the *entire lands in the appellee district,* but it is insisted that the petition is signed by the owners of a majority of the acreage of the *lands to be benefited by the*

[2] The district exercised the power of eminent domain, and has taken a portion of appellant's land for the new set-back levee. That condemnation suit appears to be pending in the circuit court. This present opinion does not directly affect that litigation; for all that appears in this record, the district may obtain elsewhere ample funds to obtain the right of way.

*new levee*: that is, the petition is signed by the owners of 2,507 acres of the territory of 4,186 acres to be benefited. Stated another way, the district contends that, the fact that the district contains 7,086 acres is immaterial, since only 4,186 acres will be protected by the proposed new levee, and will be taxed for the costs of the right of way, and therefore only the owners of a majority of the 4,186 acres need sign the petition. Furthermore, the district argues that the action of the commissioners approved by the county court, in assessing benefits for the new levee on only 4,186 acres (out of the 7,086 acres originally embraced in the district), in effect reduced the territory of the district so that only 4,186 acres are now in the district.

The circuit court agreed with the appellee, and made these findings: "(1) that the majority in value, acreage or number, refers to the new project; (2) the court construes § 4528, Pope's Digest, to mean that there must be a majority in value, acreage or number of the new project; . . . (4) the court finds that it is not necessary that there be a majority in acreage and in value and in numbers of the old or original district; (5) that the word 'district' as used in this section means the new project and not the old or original district organized in 1935."

We cannot agree with the learned circuit court in the above-quoted findings. There is no provision in the statutes here involved which authorizes a change in the boundary lines of the district to be made in the manner here attempted. The sub-district procedure (see § 4501, Pope's Digest) was not here followed or involved. Any district organized under § 4455, *et seq.*, Pope's Digest, is for the purpose of making a local improvement, with the costs to be paid by an assessment on the benefited lands. Such a district is of statutory origin, and it possesses only the powers conferred by the statute, plus those powers necessarily implied. *Board* v. *Fleming*, 93 Ark. 490, 125 S. W. 132; *Board* v. *S. W. Land & T. Co.*, 112 Ark. 467, 166 S. W. 589; *Keystone District* v. *Drainage District*, 121 Ark. 13, 180 S. W. 215; *Wood* v. *Drainage*

*District,* 110 Ark. 416, 161 S. W. 1057; and *Shewmake* v. *Hudson,* 171 Ark. 739, 285 S. W. 382.

Appellee does not argue that there is any statute which empowers the court, in computing the acreage required on the petition, to exclude all lands in the district except those thought to be benefited by the new project. But appellee does argue that, since such exclusion is apparently equitable and fair, it should be sustained, even in the absence of statutory authority. We cannot agree. Courts must administer the law as it is written in the legislative enactments. Legislative authority, permitting the reduction of the acreage of an improvement district in the manner here attempted, might be expedient or desirable; but sufficient answer to the appellee's contention is this: The General Assembly has granted no such power; nor has it authorized any such procedure as appellee is here attempting to pursue.

*Berry* v. *Cousart Bayou District,* 181 Ark. 974, 28 S. W. 2d 1060, involved practically the same question as is here presented. We quote excerpts from the facts in that case:

"In order to protect the system of drainage contemplated, the board of directors upon petition of real estate owners alleged to be a majority of those to be benefited by the proposed improvement, but not a majority in either number, acres, or value of the owners of real property in the entire district, filed an application . . ., setting up the necessity for the proposed improvements describing the same and the plans for the construction of said improvement, . . . The assessment of benefits was not on the entire lands of the district, but was an additional assessment of benefits against the lands which the assessors found would be benefited by the proposed improvement."

Under these facts we held—*inter alia*—that the petition for the "revised plans order" must be signed by a majority in number, or acreage, or valuation of the *entire district,* and not merely by a majority of those in the territory alleged to be affected by the revised plans order. We adhere to that holding.

638

It follows that the circuit court erred in affirming the orders of the county court involved in this appeal. The judgment of the circuit court is reversed, and the cause remanded, with directions to enter an order reversing and setting aside the said orders of the county court of May 16, 1947, here involved, and remanding the case to the county court with directions for further proceedings not inconsistent with this opinion.

McHANEY, Justice, dissenting. Appellee, Roland Drainage District was organized in 1935 for the purpose of constructing a levee for the protection of several thousand acres of rich lands surrounding the town of Roland, Arkansas, from overflow by the Arkansas River. The levee was constructed by the Government at its expense, the only expense to the property owners being the cost of the right-of-way for the levee and for maintenance. The right-of-way was donated by the farmers. The Rock Island Railroad runs through the district on an ambankment which afforded some levee protection to the lands in the district on the west side of its tracks. A small tax of 20 cents per acre was levied on the lands in the district on the east or river side of the tracks and 10 cents per acre on lands on the other side. No assessment was made on lots or subdivisions of lands to the town of Roland because it is on high ground above overflow and because the tax would be so small as applied to lots or subdivisions as to be impracticable of levy and collection.

It was stipulated by counsel that the 1935 order creating the district showed 7,086.94 acres in the district, of which appellant owned 121.44 acres. Total assessed benefits were less than $3,000. Flood damage to the levee so constructed in succeeding years necessitated additional work by the U. S. Engineers in 1938, 1941 and 1943. In 1943 additional benefits were assessed by order of the county court based on a petition so to do, and certain lands in the district were excluded from assessment by reason of the fact that they would receive no benefits because of the relocation of parts of the levee so as to leave them between the levee and the river, all based on the same procedure as involved on this appeal. At that

time (1943) the total acreage in the district was 6,886.94 of which appellant owned 171.44 acres. A bond issue of $5,500, based on said reassessment of benefits, was authorized and the bonds sold, to acquire additional right-of-way for portions of the proposed new levee to replace portions of the old levee which had been washed away by the high waters or had caved into the river. This was done and the Government Engineers again built the levee.

In 1945, the flood from the river caved in the levee and overtopped in places, leaving the lands in the protected portion of the district subject to overflow with every high stage of the river. The Government Engineers determined that, because of the previous trouble in maintaining a levee in prior years, a set-back levee was necessary with higher elevations, to be constructed further away from the river. A survey was made, and stakes set showing the route of the set-back levee and the Engineers proposed to construct the new levee over the new route, connected with the railroad embankment at each end, at Government expense, nearly $200,000, if the district would acquire the right-of-way.

In December, 1946, the Commissioners of the district, proceeding under §§ 4526-4529 of Pope's Digest, caused to be filed with the county court a petition of landowners of the district, purporting to be signed by a "majority in number, acreage or value of the landowners in the Roland Drainage District," praying the approval of the court of the plans of the Commissioners theretofore filed, which plans embodied a petition to re-assess the benefits, to accrue to the protected lands in the district and the exclusion from assessment of benefits all lands not benefited, including the proposed new right-of-way and all lands lying on the river side of the levee. An order was made by the court of Decmeber 13, 1946, in accordance with the prayer of the petition. An assessment of benefits was made, filed on April 26, 1947, and was approved by the court. The final result was an assessment of 50 cents an acre on lands of the district lying east of Rock Island Railroad and 20 cents an acre on lands west of the railroad.

Notice was published that hearing would be had on the re-assessment of benefits on May 16, 1947. On that day appellant appeared in court and objected to the assessment and attacked the legality of the procedure on the ground that the order of the court of December 13, 1946, finding that the petition of property owners filed December 13, 1946, contained a majority in acreage and value was erroneous. Her objections were overruled and an appeal was taken to the circuit court, where there was pending a suit by the district against her for condemnation of some of her land for a right-of-way, and in which appellant had sought to attack the validity of the procedure, as she had done in the county court, and so much of the condemnation suit as related to the validity of the procedure was there consolidated with her appeal from the county court, leaving the value of her land and damages yet to be determined.

Trial of appellant's attack on the procedure looking to a re-assessment of benefits was had in the circuit court, and resulted in an affirmance of the orders and procedure in the county court, and an appeal has been prosecuted to this court.

We understand from this record and from the briefs of counsel that the sale purposes of the procedure taken was to raise funds to acquire a right-of-way for the new or set-back levee by the issuance of bonds or other obligations based on a re-assessment of benefits on the lands of the district that would be benefited and to exclude from such assessment all lands covered by such new levee and all lands theretofore assessed lying between the levee and the river and all lands that had caved in the river. Obviously, all such lands so excluded could not be benefited, but might be damaged, and could not be assessed.

It was stipulated that the number of acres of land in the new project, that is, lands west of the levee, as shown by the assessment record filed with the county clerk April 26, 1947, was 4,186.67, with assessed benefits of $31,949.46, and that the number of acres of appellant's land included therein was 22.83, on which she

is taxed annually $11.42. The petition of landowners was signed by persons owning about 2,500 acres, clearly more than a majority of 4,186.67 acres, and is sufficient, if only those lands west of the levee are to be considered, and not sufficient if those lands between the levee and the river are to be regarded as being in the district. This is appellant's principal argument for a reversal. No other landowner, either within or without levee protection is complaining. The levee has been constructed. All landowners affected, except appellant, have conveyed to the district the right-of-way over their lands, and the district has paid out for this purpose already approximately $10,000, and we assume was compelled to borrow the money for this purpose, since the district still owes on the previous bond issue of 1943 $2,500 which it seeks to refinance in this proceeding. Appellant seeks to destroy the whole procedure taken to re-assess the benefits in order to raise funds to acquire the right-of-way for the new or set-back levee, and, at the same time, she is seeking to recover from the district a large sum for the value of her lands already taken and for large damages to her lands not taken, but left outside of the levee, between it and the river.

These positions appear to me to be contradictory and inconsistent. She has the right to contest with appellee the value of her land taken and the damages, if any, to her land not taken, but she cannot at the same time contest the validity of the petition of property owners on which the assessment of benefits is based, because if the procedure taken is invalid, she cannot be paid for her land taken.

Appellant also contends that appellee should have proceeded under § 4501 of Pope's Digest, relating to the formation of sub-districts. I do not agree. This is not a sub-district of Roland Drainage District, but is the same old district with reduced acreage, because of a setback levee, and appellant is again faced with the inconsistency of her positions.

Moreover, I am of the opinion that the court properly held that only those lands in the district that will

be benefited should be considered in determining whether a majority in numbers, acreage or value signed the petition for the additional improvement. Just how much of the land originally in the district in 1935, has caved in the river and been washed away we do not know, but we assume that a substantial portion thereof has ceased to be or to exist as land, and it seems to be unreasonable to say that such land is still in the district and must be taken into consideration in determining whether the petition here was signed by the requisite number. It appears to me to be unreasonable to say that such lands are still in the district. Also, it appears to me that all lands still in place but between the levee and the river and all lands actually covered by the new or set-back levee should be considered as now out of the district, and that the original district has been reduced in acreage to the stipulated number of acres, 4,186.67. These lands are not taxed for the right-of-way for the new levee, and just why their owners should be consulted in the new improvement is difficult for me to understand, also just how appellant will be benefited by a reversal of this case is not understandable. The levee has been constructed and a portion of her land taken for right-of-way therefor. Her tax on the few acres of land she has left in the district is nominal. She may have made it impossible for the district to pay her for her land taken. While I have found no express statutory authority for the reduction in acreage of the original district in the manner here pursued, the statute does not expressly prohibit it and should be so construed as to permit the procedure here followed.

I think the case of *Berry* v. *Cousart Bayou Drainage District*, cited in the majority opinion, is not in point with the facts here, and that the judgment should be affirmed.

I therefore dissent and am authorized to say that Mr. Justice Holt concurs in the views here expressed.