CAMPBELL *v.* BEAVER BAYOU DRAINAGE DISTRICT.

4-8828                                         219 S. W. 2d 934

Opinion delivered April 25, 1949.

Rehearing denied May 23, 1949.

*Dinning & Dinning,* for appellant.

*Burke, Moore & Burke,* for appellee.

Ed. F. McFaddin, Justice. The Beaver Bayou Drainage District was created by Act 92 of the Acts of the Legislature of 1907; and the Act was amended by Act 379 of 1911 and also by Act 154 of 1913. Then the Legislature, by Act 370 of 1920, confirmed the assessment of benefits in the District, and authorized the commissioners to continue to collect assessments for maintenance of the drainage system after the bonds had been paid that were to be issued for construction. The improvements contemplated by the said legislative enactments were made about 1921. The bonds issued to pay for the improvements were finally retired in 1947; and slightly less than $200,000 of the original assessed benefits, not having been used for retiring the bonds, remained as potentially susceptible of use for maintenance.

In December, 1947, the commissioners of the District, directed that a levy of 2½% be collected on the assessed benefits, the proceeds of such collection to be used for maintenance work which had been neglected for many years, while current collections were being used to retire the outstanding bonds. In March, 1948, appellants, Campbell and other landowners as plaintiffs, filed suit in the Chancery Court, seeking to prevent the District (defendant below and appellee here) from collecting any further assessments. The plaintiffs also made

other attacks on the District, and on the procedure pursued by the Commissioners. After hearing the evidence the Chancery Court dismissed the complaint, and this appeal challenges the chancery decree.

In the complaint filed in the Chancery Court multiple attacks were made on the Act creating the District, as well as on the actions of the commissioners; but on appeal to this Court only two main points are argued. Under our well-established holdings, in a civil case all assignments not argued in the briefs are considered to be waived;[1] so we proceed to discuss the points contained in appellants' brief.

I. *Constitutionality of Act 370 of 1920.* Appellants say:

"Under the powers undertaken to be granted by that Act, the Directors of the appellee district have undertaken to manage the affairs of the district since February 26, 1920, and are at this time undertaking to exercise the powers given under that Act.

.  .  .  .  .  .  .  .

"The Act in question was unconstitutional and void from its beginning, for the following reasons:

"1. It created a Board of Commissioners of the District and named the members and provided that they should perpetuate themselves in office indefinitely.

"2. It authorized them to levy assessments against the lands embraced in the district at their pleasure, and for any purpose (for) which they might desire to use the proceeds of same.

"3. It authorized the directors without approval of any court to enlarge and deepen existing canals, and to construct new lateral canals at their pleasure, without consulting the owners of the property, or without procuring any authority from any court."

As to appellants' first ground of attack (*i. e.*, the Legislature naming the commissioners and allowing

---

[1] *Plunkett-Jarrell Grocer Co.* v. *Freeman*, 192 Ark. 380, 92 S. W. 2d 849, and see cases collected in West's Arkansas Digest, "Appeal and Error," § 1078.

them to fill vacancies in certain cases) we need only point out that in *Reitzammer* v. *Desha Road Imp. Dist.*, 139 Ark. 168, 213 S. W. 773 we stated that it was within the power of the Legislature, in creating special improvement districts, to name the commissioners and to allow them to fill vacancies on the Board of Commissioners.

As to the appellants' second ground of attack (*i. e.*, levy of assessment of benefits), the Legislature confirmed the assessment of benefits, and empowered the commissioners to collect such portions of the assessed benefits as might be required from time to time to satisfy the obligations of the District and maintain the improvement. Similar legislative enactments have been upheld in the cases of *North Ark. Highway Imp. Dist.* v. *Rowland,* 170 Ark. 1168, 282 S. W. 990 and *House* v. *Road Imp. Dist.*, 158 Ark. 330, 251 S. W. 12.

As to the appellants' third ground of attack (*i. e.*, empowering the commissioners to construct new lateral canals), it is sufficient to say that this litigation does not present a situation in which the commissioners are attempting to construct any new improvement. All that the commissioners in this case now propose to do is to clean out existing ditches, and certainly it was within the power of the Legislature to authorize the maintenance in good condition of the ditches which were constructed for the benefit of the property in the District, and which property the Legislature—within its power as shown by the cases previously cited—determined to be benefited by the improvements.

To summarize: we hold that Act 370 of 1920 is valid as against the attacks here made on it.

II. *Effect of Act 227 of 1927 on Act 370 of 1920.* Appellant says: "It is rather remarkable that a board of commissioners, undertaking to manage as large an operation as that of financing a district that has 50,000 acres of land, should, for a period of twenty years, ignore or disregard Act 227 of the Acts of 1927, as construed by this court in the case of *Berry* v. *Cousart Bayou Drainage District,* 181 Ark., at page 974, 28 S. W.

2d 1060. Not the slightest attempt has been made to comply with the general statute of the State of Arkansas, passed for the purpose of regulating the operation of drainage districts, and of fixing the powers and obligations of the persons undertaking to discharge the duties as managers.''

The above-quoted language poses the question listed in this topic heading. Act 227 of 1927 is entitled, ''An Act in Aid of Drainage Districts Formed under Special Laws.'' The Act contains a preamble, which reads:

''Whereas, there are in this State many drainage districts created by Special Laws, which need amendment, but which cannot be amended under the present constitutional restrictions; and

''Whereas, the general drainage law, which appears as Act number 279 of the year 1909, furnishes an adequate uniform system for the operation of drainage districts:''

The Act then provides:

''Section 1. All drainage districts created by special acts are hereby made drainage districts under the term of Act Number 279 of the Acts of the General Assembly of the State of Arkansas of the year 1909, as amended, said Act being entitled, 'An Act to provide for the creation of drainage districts in this State', approved May 27, 1909, with all the powers conferred by said Act No. 279, and with all the liabilities and restrictions thereby imposed. Provided, nothing in this Act shall be construed as taking away from any improvement district created by special acts any powers which are thereby conferred upon it, nor shall it displace any commissioners or directors of such districts now in office.''

Appellee Beaver Bayou Drainage District is a ''special district'', in that it was created and empowered by special acts of the Legislature. Special acts were common practice until the adoption by the People of Constitutional Amendment 14 at the General Election in 1926. Prior to that Amendment the Legislature had

from time to time amended and enlarged the special acts, just as in the case at bar by the Acts first mentioned in this opinion, and affecting this District. But after the adoption of Amendment 14 in 1926 the Legislature was powerless to amend special laws; nevertheless, the Legislature desired that various improvement districts created by special acts should enjoy enlarged powers, so Act 227 of 1927 was adopted. The proviso of section 1 of that Act, as previously quoted, says:

"Provided, nothing in this Act shall be construed as taking away from any improvement district created by special acts any powers which are thereby conferred upon it, nor shall it displace any commissioners or directors of such districts now in office."

It is clear that the legislative intent was—and we so hold—that any special district created prior to 1926 continues to enjoy and exercise all the powers that such district had under its organic law. And, in addition, every special district also enjoys and may exercise all the powers allowed to districts created under the general law (that is, Act 279 of 1909 and amendments, and known as the Alternative Drainage District Law); but in the enjoyment of the enlarged powers allowed by the provisions of the general law, the special district must exercise such enlarged powers in the manner provided by the general law.

In the case at bar all the powers that the appellee district is seeking to exercise at this time are the powers that the district enjoyed under its special law, since the applicable portion of section 7 of Act 370 of 1920 reads: ". . . the directors are authorized and directed to constantly maintain such improvements by keeping the canals and ditches cleaned out and open and to pay therefor from the assessment of benefits, . . ."

So we hold that Act 227 of 1927 does not restrict the appellee district and its commissioners in what is now being undertaken in the case at bar.

Appellants cite and strongly rely on the case of *Berry* v. *Cousart Bayou Drainage Dist.,* 181 Ark. 974, 28 S. W. 2d 1060 as being applicable to the case at bar;

but a careful study of the case shows that it is distinguishable on the facts, and that its holding was not directed to a situation similar to the one which now confronts us. In all instances courts should be guided by the real holding—*i. e.*, the essential—rather than by the *dicta*—*i. e.*, the incidental, in previous cases.[2] In the Berry-Cousart case the District had been created by a special act (Act 283 of 1907), and its powers had been enlarged by a subsequent special act (No. 677 of 1923). The opinion of this Court recites: "The system is inadequate, and does not properly drain the lands within the district. The work provided for by the plans has been completed."

With that situation confronting it, the Cousart Bayou District then undertook to add certain territory and assess the benefits against some of the land in the added territory, and then to pledge all old unused benefits and all new beenfits for a new bond issue, the proceeds of which were to be used to perform work not contemplated originally. It is clear that, in starting a new improvement, the District was putting itself within the purview of the general law (the Alternative Drainage District Law), rather than continuing to proceed exclusively as a special district for its original purpose. While the organic acts of the Cousart Drainage District contained language which might have allowed some latitude in construction; yet when a new enterprise was attempted, such new endeavor was beyond the legislative contemplation when the district was empowered by the special legislative acts. So the holding of this Court in the Berry-Cousart case required that a special district, if it undertakes a new project, should do so under the general law. We do not impair that holding. On the contrary, we emphasize that if a Special District, even in routine matters of its continued existence, should proceed under the general law, all such actions would be valid because they would possess not only the affirmative actions of the commissioners (as required

---

[2] In *McLeod* v. *Dilworth*, 205 Ark. 780, 171 S. W. 2d 62, we said: "We point this out so that the *dicta* in one decision will not be seized upon as the *ratio decidendi* in the next decision; . . ."

under the special law), but also the action of the County Court (required under the general law).

In the case at bar the appellee district is not undertaking a new project, but is merely cleaning out its drainage ditches as originally constructed. We hold that the case at bar is distinguished on its facts from the Berry-Cousart case. We hold that the appellee district, under its powers in its special acts, may collect any unused assessments for cleaning out the ditches originally constructed. The cases of *Indian Bayou Drainage Dist.* v. *Dickie*, 177 Ark. 728, 7 S. W. 2d 794; *Cox* v. *Drainage Dist.*, 208 Ark. 775, 187 S. W. 2d 887; and *Walker* v. *Roland Drainage Dist.*, 212 Ark. 633, 207 S. W. 2d 319 are not in point here, because in each of those cases the District had been organized under the general law.

The decree of the Chancery Court is in all things affirmed.

Justices HOLT and GEORGE ROSE SMITH dissent.

GEORGE ROSE SMITH, J., dissenting. It seems to me that our only choice is to follow the *Berry* case or to overrule it. There the special act directed the drainage district to construct a new canal and specified the manner in which the district might annex territory benefited by this new improvement. The district attempted to proceed under its special acts, but the court held that the 1927 statute required the district to follow the general drainage law. That Act was held to deprive special act districts of any powers inconsistent with the general law.

So here, the general statute permits the levy of a tax for maintenance of the type contemplated by appellee. It requires, however, that the commissioners give public notice of their intention to apply to the county court for an order levying the tax and permits interested landowners to appear and object. Ark. Stats. (1947), § 21-533. The special act is wholly inconsistent with the general law; it authorizes the commissioners themselves to levy the tax, without notice or court order. The holding in the *Berry* case therefore demands that the district pursue the general law.

The majority draw a distinction between maintenance and new work, but this distinction does not seem to be supported either by the statutes or by any reason of public policy. The 1927 statute does not contain a word to indicate that the lawmakers had any such distinction in mind when the Act was drawn. As a matter of policy, there is much to be said for the result reached in the *Berry* case, by which all drainage districts are brought under a uniform system of law. In this particular case, it would certainly be desirable to give the landowners an opportunity to protest additional taxes which they may have to pay annually for the rest of their lives. For these reasons Justice HOLT and I are unable to concur in the majority opinion.