CHERRY *v*. COUSART BAYOU DRAINAGE DISTRICT.

5-222                                          259 S. W. 2d 513

Opinion delivered July 6, 1953.

L. *Dewoody Lyle,* for appellant.

*A. F. Triplett,* for appellee.

ED. F. McFADDIN, Justice. This appeal challenges an order of the Jefferson Circuit Court, which granted the directors of the Cousart Bayou Drainage District[1] (sometime hereinafter called ''Cousart'') the authority to purchase a dragline and equipment for said district under the provisions of § 21-575 Ark. Stats.

On May 29, 1953, a petition, signed by a majority of the landowners in Cousart, was filed in the Jefferson Circuit Court[2] praying that the Directors of the District be empowered to purchase a dragline and equipment in order to clean and keep clean the drainage ditch of Cousart. That the petition is signed by the requisite majority is conceded.[3] The Circuit Court forthwith directed that the hearings on the said petition be set for June 19, 1953, and that notice of such hearing be given.[4]

---

[1] The Cousart Bayou Drainage District was originally created by Act No. 283 of 1907 for lands in Jefferson County. Then, by Act No. 19 of 1909, the district was enlarged to also include lands in Lincoln County. Other legislative enactments increasing or otherwise modifying the powers of the district are Act No. 144 of 1911; Act No. 677 of 1923; Act. No. 118 of 1925. In *Berry* v. *Cousart Drainage Dist.,* 181 Ark. 974, 28 S. W. 2d 1060, we held that the district enjoyed the benefits of Act No. 227 of 1927, now found in § 21-568 Ark. Stats.

[2] Cousart is a district with lands in two counties. Most of the lands are in Jefferson County, so the Jefferson Circuit Court has jurisdiction under § 21-501 Ark. Stats.

[3] The appellant's brief in this Court states: "The majority of the property owners have now filed a petition asking the Board of Directors to purchase a dragline. . . ."

[4] The order for notice recites: ". . . and the Clerk of this Court is hereby directed to publish a notice in both Jefferson and Lincoln Counties, Arkansas, once a week for two weeks, advising the property owners of such hearing . . ."

At the hearing on June 19, 1953, appellant resisted the petition for himself and for any other interested land owners. The Circuit Court granted the petition and authorized the Directors of Cousart to purchase the dragline and equipment. This appeal challenges the Circuit Court order.

In *Halsell* v. *Drainage District*, 216 Ark. 746, 227 S. W. 2d 136, we held that a District could purchase a dragline under a situation such as exists in the case at bar. In the Halsell case, the question was: " 'Has Drainage District No. 17 the power and authority to purchase a dragline and equipment to be used by the District in cleaning out and maintaining its drainage system?' " We answered that question in the affirmative; and the opinion in the Halsell case is ruling here as to the power of Cousart to proceed under § 21-575 Ark. Stats.

The appellant claims that § 21-575 Ark. Stats. is too indefinite[5] to authorize the Court to empower Cousart to act; but we hold that the appellant's contentions are without merit. Section 21-575 Ark. Stats. is a part of Act No. 95 of 1947, and that Act says in § 2 thereof (as found in § 21-576 Ark. Stats.):

"This Act is supplemental and does not repeal any existing drainage law."

The last quoted language clearly means that the power contained in § 21-575 is supplemental to the other powers of Drainage Districts. Act No. 227 of 1927 (now § 21-568 Ark. Stats.) provides that districts organized by special acts shall be regulated by general law: so for the exercise of the power granted under § 21-575 Ark. Stats., and the procedure as to notice, hearings,

---

[5] On this point appellant says:

"That such section 21-575 is too indefinite in its provisions to constitute a workable law and is therefore void in that such section:

(a) makes no provision as to how or by whom it is to be determined whether a majority of the property owners have signed said petition,

(b) contains no provision for notice of any kind to the property owners in said District of any hearing to be held on such petition,

(c) contains no provisions as to a hearing on such petition,

(d) contains no provisions for the levying of a tax or borrowing money beyond the general statement that for the purposes of carrying out the provision of such act drainage districts are authorized to levy a maintenance tax and obtain funds as now provided by law."

determination of the majority, and authorization for borrowing money, recourse must necessarily be had to the general law regulating procedure by Districts. Circuit Courts have jurisdiction of drainage district matters, where the district embraces land in two or more Counties. (§ 21-501 Ark. Stats.) Setting the case for hearing and directing publication of notice is governed by § 21-533 Ark. Stats.

There remains for consideration only the question of the authority of the District to borrow money to purchase the dragline. Section 21-533 Ark. Stats. provides:

"The district shall not cease to exist upon the completion of its drainage system, but shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from obstruction and of extending, widening or deepening the ditches from time to time as it may be found advantageous to the district."

Section 21-553 Ark. Stats. authorizes districts to borrow money and issue bonds. Here, as in the Halsell case,[6] there is no question presented that would indicate any impairment of the rights of the bond holders. The Court found that Cousart has outstanding bonds of only $26,000, and has on hand at this time more than enough money to pay all of the outstanding bonds and leave about $10,000 to be applied on the purchase of the dragline. The Court found that the dragline and equipment would cost approximately $45,000; so if the present bond holders are all paid (and Cousart has such right of prepayment), and money is borrowed to supplement the funds on hand for the purchase of the dragline, no present bondholder could be hurt.

The Court found that Cousart has unused benefits in excess of $500,000. A continuation of the present collection rate of 3% on assessed benefits will provide ample funds to retire the purchase price of the dragline and equipment, and also provide funds for cleaning out the drainage ditch. This is not a case of undertaking new improvements, but rather is the maintaining of

---

[6] *Halsell* v. *Drainage Dist.*, 216 Ark. 746, 227 S. W. 2d 136.

the improvements that have already been made. See *Cox* v. *Drainage Dist.,* 208 Ark. 755, 187 S. W. 2d 887; and *Campbell* v. *Beaver Bayou Drainage Dist.,* 215 Ark. 187, 219 S. W. 2d 934.

The judgment of the Circuit Court is affirmed.