WATSON *v.* DRAINAGE DISTRICT No. 3, CRITTENDEN COUNTY.

4-9385　　　　　　　　　　　　　　236 S. W. 2d 423

Opinion delivered February 12, 1951.

362

*Cecil B. Nance,* for appellant.

*Hale & Fogleman,* for appellee.

GEORGE ROSE SMITH, J. In 1949 the appellee, Drainage District No. 3 of Crittenden County, petitioned the county court to levy annually for ten years a tax of 5% of the assessed benefits for the purpose of cleaning out and maintaining the district's drainage system. Ark. Stats., 1947, § 21-533. The appellant, a landowner within the district, protested the proposed levy on the theory that the benefits assessed against his land had been paid in full and that any additional levy would have to be authorized by a majority of the landowners, as set forth in *Cox* v. *Drainage Dist. No. 27,* 208 Ark. 755, 187 S. W. 2d 887. The county court found that the assessed benefits had not been paid in full and that a sufficient amount of uncollected benefits remained to permit the suggested levy. The court levied the tax as requested, and the circuit court affirmed the order. The case was then brought to us.

All material facts are stipulated. The district was organized under the general law in 1916, to construct a drainage system at an estimated cost of $228,911.32. Bonds in the amount of $240,000 were issued, and the commissioners estimated that the total cost of the improvement, including interest on the bonds and a 10% margin of safety, would be $430,925. Benefits assessed against the lands totaled $440,478.50. To pay the bonds the county court originally levied a tax of 3½% of the benefits for 1917 and 5% annually for the next nineteen

years, making a total of 98½% of the assessed benefits. In 1921 a second bond issue of $35,000 was sold, and the tax was increased to 6½% annually for the years 1927 through 1936. It is agreed that the total tax levies from 1917 through 1939, when the bonds were retired, have amounted to 123.6% of the assessed benefits. After 1939 the district was dormant until the present petition was filed in 1949.

Of course, the reason the district was able to collect more than the face amount of the benefits is that the assessed benefits bear interest at 6% per annum if the landowner does not elect to pay his assessment in full when the district is formed. Ark. Stats., §§ 21-540 and 21-541. The main issue in this case concerns the method of calculation to be used in determining when the landowner has paid the full amount of his assessed benefits, together with interest. We have touched upon this question several times, but we have not had occasion to state the formula that is to be applied in all cases.

The case that comes nearest to reaching this question is *Richey* v. *Long Prairie Levee Dist.,* 203 Ark. 1, 155 S. W. 2d 582. There the district levied an annual tax of 6% of the assessed benefits from 1918 through 1922 and thereafter an annual tax of 8.75%. We approved the trial court's use of the ordinary rules governing the application of partial payments. Under these rules the annual payments of 6% in the early years merely discharged the interest, and it was not until the tax was increased to 8.75% that the landowner began making payments on the principal.

The present case is somewhat different in that until 1927 the annual levies were *less* than the 6% interest rate. The question naturally arises, should the uncollected interest be added to the principal and be available for future tax levies? A study of the statutes convinces us that this was not the legislative intention. Until the passage of Act 177 of 1913 (Ark. Stats., § 21-540), the assessment of benefits did not bear interest. We had previously held that in the absence of statute the interest on borrowed money should be included as part of the

cost of construction. *Fitzgerald* v. *Walker,* 55 Ark. 148, 17 S. W. 702. In practice this decision meant that the benefits from the proposed improvement had to exceed both the principal and interest of the bonds, else the cost of construction would be greater than the benefits.

It is evident that a primary purpose of Act 177 of 1913 was to alleviate this situation. The statute was first construed in *Oliver* v. *Whittaker,* 122 Ark. 291, 183 S. W. 201. There, after referring to the *Fitzgerald* case, we said that additional burdens could not be cast on the landowners unless the assessment of benefits could be made to bear interest. It was pointed out that the 1913 statute gave the landowner the option of paying his assessment in full when the district was formed. If that option was not exercised the interest on the bonds would be met by the interest on the deferred payments of assessments. That holding makes it clear that one purpose of the 1913 law was to permit interest on benefits to offset interest on bonds. Even more indicative of the legislature's thought was the statute construed in *Pfeiffer* v. *Bertig,* 141 Ark. 531, 217 S. W. 791. That statute provided that if the commissioners had to borrow money to construct the improvement they could fix a rate of interest on the assessed benefits sufficiently high to meet the interest on the bonds. Here again the two interest factors were closely allied.

In the light of this legislative history we cannot believe that the legislature intended that uncollected interest should be added to the principal. In this case, for example, the district was dormant from 1939 to 1949. During those years no taxes were levied; the landowners were in no sense in default in failing to pay interest on their assessments. They were not then taking advantage of the option to pay in installments, for no installments were due. It is not reasonable to think that the legislature meant for the landowners' potential liability to be increased by 60% during such a period of inactivity. Rather, it is our conclusion that the annual interest on the assessed benefits was available to the district if it chose to collect all or any part of it by the levy of a

tax, but in any given year the district's failure to collect the full amount of interest operated as a waiver of the uncollected amount.

Hence, in the absence of some other procedure expressly adopted by the district, the rule is that the annual payments should be applied first to interest. If the annual levy is not more than 6% the principal remains intact. Payments in excess of 6% of the unpaid principal reduce it to the extent of the excess, but payments of less than 6% of the unpaid balance do not increase the principal by the addition of the uncollected interest. When this formula is applied to the present case the uncollected benefits are found to be ample to support the tax now complained of. In only ten years, 1927 through 1936, have the landowners been required to pay more than 6% of the benefits. In those years they paid $6\frac{1}{2}\%$ annually, thereby reducing the principal one-half of 1% in 1927 and slightly more in the succeeding years as the unpaid balance became progessively smaller. Without encumbering this opinion with mathematical calculations it is enough to say that there are plainly enough uncollected benefits to warrant the levy of this tax.

The appellant further contends that even though the benefits are sufficient when so computed, the effect of Act 285 of 1941 (Ark. Stats., § 21-541) was to remove this district from the operation of the statutes that provide for interest on the assessment of benefits. Act 285 slightly amended the 1919 statute which provided for such interest and also added this proviso: "provided, that this act shall not apply to districts heretofore organized in which interest on bonds or other borrowed money was calculated as a part of the cost of construction and included in the assessment of benefits." The present contention is based in part on the fact that in this district the amount of the assessed benefits exceeded the total of principal and interest on the bonds and therefore "included" the interest on borrowed money. This same argument was made and rejected in *Flat Bayou*

*Dr. Dist.* v. *Atkinson,* 217 Ark. 575, 232 S. W. 2d 76. We adhere to our ruling in that case.

It is also said that certain proceedings in the organization of the district show that interest on the bonds was included in the assessed benefits. In estimating the total cost of the improvement the commissioners calculated the interest that would accrue on the bonds. In petitioning the county court for the levy of the original tax the commissioners represented the total cost to be $430,925, which was stated to include interest and a margin for contingencies. The order levying the tax recited these facts with respect to estimated costs. And in the assessment list there was a column in which the total tax to be paid upon each tract was estimated, these totals amounting to $421,506.03 in all.

These facts undoubtedly show that the interest on the bonds was calculated as a part of the cost of construction. But this is only one of the requirements of the proviso in Act 285; the other is that this item be included in the assessment of benefits. The Commissioners must not only have valued the benefits to the various lands but also have included therein the interest on money to be borrowed. In the absence of some written evidence in the assessment proceedings to show that such a course was followed by the commissioners, Act 285 has no application.

Finally, the statute of limitations is urged as a bar to the proposed maintenance levy. This position is unsound. The drainage law provides that the district shall not cease to exist upon completion of its drainage system but shall continue for the purpose of keeping the ditches free from obstruction and preserving them. To this end the commissioners may from time to time apply to the county court for the levy of additional taxes. § 21-533. The lawmakers evidently realized that a drainage system will from time to time be obstructed by sediment, weeds, saplings, etc. The entire system may become worthless unless the ditches are kept clear so that the water will flow as intended. The statute therefore vests in the district a continuing power to maintain its

drainage system. In some cases, such as the present one, there may be no need for the exercise of this power for many years. Here it is stipulated that no substantial sums have been expended for maintenance since the district was created in 1916. There is certainly nothing in the statute to indicate that this drainage system, constructed at a cost of over $400,000, must be allowed to become obstructed and useless merely because maintenance was unnecessary for many years. It was to provide for this situation that the commissioners were vested with a continuing power to maintain the system. The statute of limitations plays no part in the matter until there is levied a tax which gives the district an enforceable cause of action.

Affirmed.

GRIFFIN SMITH, C.J., concurs in part and dissents in part.

ED. F. McFADDIN, Justice (Concurring). I agree with the result reached by the majority in the case at bar: but concur to emphasize my views on one particular matter.

I am of the opinion that the "interest-on-benefits," having ceased in 1939 when the bonds were paid off, would not again commence to run until the District issued bonds, or incurred indebtedness, that bore interest. In other words, it is not the levying of a tax for maintenance work that will set the "interest-on-benefits" machinery in operation: rather, it is the incurring by the District of interest-bearing indebtedness. The history of the legislation, as outlined in the majority opinion, clearly points to such a conclusion: after the holding in *Fitzgerald* v. *Walker,* 55 Ark. 148, 17 S. W. 702, the Legislature adopted Act 177 of 1913 which provided that the benefits would bear interest; in *Oliver* v. *Whittaker,* 122 Ark. 291, 183 S. W. 201, it was shown that the effect of the 1913 Act was to allow sufficient cushion to make the bonds salable. As I see it, the entire idea of "interest-on-benefits" was to make salable the bonds of a District. So when all the bonds are paid, there is no occasion for

the benefits to bear interest until new bonds are issued, or other interest-bearing obligations incurred.

The majority opinion seems to recognize such legislative history, for it contains this language in speaking of *Oliver* v. *Whittaker*:

"That holding makes it clear that one purpose of the 1913 law was to permit interest on benefits to offset interest on bonds. Even more indicative of the legislature's thought was the statute construed in *Pfeiffer* v. *Bertig,* 141 Ark. 531, 217 S. W. 791. That statute provided that if the commissioners had to borrow money to construct the improvement they could fix a rate of interest on the assessed benefits sufficiently high to meet the interest on the bonds. Here again the two interest factors were closely allied."

Thus, the "interest-on-benefits" has always been something to offset the interest on the bonds; and when there are no bonds to bear interest, then there is no "interest-on-benefits." In the case at bar there is no occasion for the majority to state when, if ever, the benefits would begin to bear interest, because the unpaid benefits, regardless of interest, are sufficient to yield a large amount; and the appeal in this case posed the question of whether any benefits remained to support the tax levy made.

For illustration, I take the case of the benefits assessed against the lands of the appellant, as shown by the stipulated facts: in 1916, the benefits assessed against his land were $6,546.50. He paid his taxes regularly each year, but the tax levy from 1917 to 1926, inclusive, was less than six per cent per annum, so in effect, during those years he paid only the interest on his benefits. It was only from 1927 to 1936, inclusive, that the tax rate exceeded six per cent per annum. So in those years he paid on his benefits only such amount as exceeded the six per cent each year. I have made a detailed calculation and arrived at the conclusion that in 1939, when all outstanding bonds of the District were retired, the remaining benefits unpaid by the appellant amounted to

$5,754.87 : so he has only paid $791.63 on his total benefits of $6,546.50. Thus, there remained in 1949 a substantial sum of benefits against which the maintenance tax could be levied. Just because the maintenance tax was levied in 1949 does not set in operation the Statute providing for "interest-on-benefits" on the $5,754.87. If such "interest-on-benefits" should resume, then it is clear that the appellant would never reduce the benefits which are a lien on his land, unless there should be levied a maintenance tax in excess of six per cent per annum. In my opinion, the $5,754.87 remaining benefits on appellant's land do not begin to bear interest until bonds or interest-bearing indebtedness be issued by the District. The effect of my views would be that the payment of the tax in 1949, and subsequent years, would go to reduce the amount of unpaid assessed benefits.

But the question in this case, as previously stated, is whether there *are* benefits, and not *when* the benefits will begin to bear interest. Therefore, my concurrence is *dicta;* but it is uttered to aid those who in the future may consider this matter of "interest-on-benefits" when the question may become necessary to a decision.

Mr. Justice WARD joins in this concurrence.