James C. PRICE, et al. *v.* DRAINAGE DISTRICT NO. 17,
Mississippi County, AR., et al.

89-249                                              787 S.W.2d 660

Supreme Court of Arkansas
Opinion delivered April 16, 1990
[Rehearing denied May 14, 1990.]

*Bill W. Bristow*, for appellants.

*Mixon & McCauley*, for appellees.

ROBERT H. DUDLEY, Justice. Various landowners filed three (3) separate suits alleging that a tax by appellee drainage district constituted an illegal exaction because, among other reasons, there was a failure to levy the tax. One of the suits was certified as a class action with the class representing all of the taxpayers in the district. The three (3) cases were then consolidated. The appellee district filed a motion for summary judgment. At a hearing on the motion some of the district's records were stipulated into evidence. The trial court granted summary judgment and dismissed the case. We reverse the granting of summary judgment and remand for further proceedings.

Drainage District No. 17 of Mississippi County, appellee, was created by a special act of the General Assembly, Act 103 of 1917. In 1918, the commissioners of the drainage district laid out the plan of improvement, assessed benefits and damages, and borrowed money to build the improvement. The county court levied special assessments to be paid annually until bonds which financed the improvements were paid in full. A special curative act which remedied any defects in the 1918 proceedings was passed, Act 305 of 1920. By 1984, the bonds had been paid, and only a maintenance tax was being collected on all the lands within the district. However, the revenue from the maintenance tax was not sufficient to properly maintain the drainage ditches and levees; so, the commissioners decided to obtain additional maintenance taxes.

Meanwhile, in 1927 the General Assembly had enacted Act 277 which conferred upon drainage districts created by special acts all of the powers given to drainage districts under the general laws applicable to drainage districts. Ark. Code Ann. § 14-121-208 (1987). See also *Meador* v. *Warrington*, 228 Ark. 297, 307 S.W.2d 75 (1957), and *Winton* v. *Bartlett*, 181 Ark. 669, 27

S.W.2d 100 (1930). Moreover, this act specifically provides that it does not take away any powers given to the district by special act.

Accordingly, in order to obtain additional taxes with which to maintain the ditches more adequately, the commissioners had their choice of proceeding pursuant to the original special act or under the general laws. They chose to proceed under the special act. In September 1984, the commissioners filed a petition in county court asking for a reassessment of benefits and for a tax to be levied on those reassessed benefits. The county court set a date for a hearing, and the commissioners published notice of the hearing. The notice provided that the hearing would be on the matter of "reassessment of benefits for all property within the District, and levying a tax thereon." The hearing was held, and the county judge ordered a second hearing. Notice of the second hearing was duly published.

On November 7, 1984, without a reassessment of benefits actually being had, the county judge ordered that "assessed benefits" to all rural property be set at $50.00 per acre and that the "assessed benefits" on all urban property "be set as recommended" by a reappraisal firm. He then ordered "that the tax rate on the above properties be 2% in Drainage District No. 17 and 4.4% in Sub-District No. 1 of Drainage District No. 17." Most importantly, he ordered "that the Drainage District be and it is hereby authorized and directed to *levy and collect for the year 1985* the taxes as stated above. . . ." The evidence introduced on the motion for summary judgment shows no order levying or authorizing collection of taxes for the years after 1985.

Appellants make four (4) assignments of error, each asserting a reason that summary judgment should not have been granted. We need address only one of them because it mandates reversal. In it, appellants contend that the tax was authorized and levied only for the year 1985, and yet in subsequent years, the district continues to collect the tax, and such constitutes an illegal exaction for all years after 1985.

■ There must be a levy of taxes in order to have a valid tax. *Certain Lots* v. *Monticello*, 159 Fla. 134, 31 So. 2d 905 (1947); *Commonwealth* v. *Chesapeake, O. & S. R. Co.*, 141 Ky. 633, 133 S.W. 559 (1911); *St. Louis-San Francisco Ry. Co.* v. *Bruin*, 264

Fed. 789 (1920); Cooley, *The Law of Taxation*, § 1015 (1924). "It is the first essential to a valid tax." *Isbell* v. *Board of Supervisors of Woodbury County*, 243 Iowa 941, 54 N.W.2d 508 (1952), citing 72 Am. Jur. 2d § 707 (1974). "A local tax is not valid unless it is levied by the proper local authorities." *Isbell* v. *Board of Supervisors of Woodbury County, supra.* To levy a tax means to impose the tax under authority of law. *Certain Lots* v. *Monticello, supra.* Cooley, *The Law of Taxation*, § 1012 (1924). Although we have no Arkansas cases describing "levy," our cases, statutes, and Constitution use the word in the same way, that is, to impose a tax under authority of law. *See Collar* v. *Crowley*, 202 Ark. 1159, 155 S.W.2d 578 (1941); *Hopson* v. *Oliver*, 174 Ark. 659, 298 S.W. 489 (1927); *Standard Pipe Line Co.* v. *Index-Sulphur Drainage District*, 173 Ark. 372, 293 S.W. 1031 (1927); *Rosselot* v. *Greene and Lawrence Drainage Dist.*, 137 Ark. 53, 207 S.W. 219 (1918); *Vance* v. *Little Rock*, 30 Ark. 435 (1875). Ark. Code Ann. §§ 14-120-318, 14-120-319(2) (1987); Art. 16 § 11 of the Constitution of Arkansas. The special statute which governs this proceeding, Act 103 of 1917, also uses the term in the same manner. Section 13 of that act provides, in part, that "[T]he board may apply to the county court for and secure an order of said court, which shall have all the force of a judgment . . . The tax so levied shall be a lien upon all the real property in the district. . . ." In addition, section 20 of Act 103 provides, in part, that "[I]t shall be the duty of said county court to make such levy for its completion from year to year until it is completed. . . ."

    In this case, the order authorized the district to "levy and collect for the year 1985." No other authority to impose the tax is shown in the evidence. Thus, there was no showing of a valid or lawfully levied tax for the years after 1985, and the trial court erred in granting summary judgment in favor of the taxing district.

The appellee district argues that we should affirm the granting of summary judgment because the appellants did not object in a timely manner and because language in the special act automatically extends the taxes upon the tax books. Neither argument has merit.

    Had there been a levy of a tax in the years 1986 and

thereafter, by the county court, the appellants might well have been required to appeal within thirty (30) days. However, since there was no levy, there was no need to appeal. The county court's power to levy a tax was not exercised in an erroneous manner; it was not exercised at all. There was no levy from which to appeal. Furthermore, that part of section 20 of the special act which provides for automatic extension upon the tax books simply means that taxes are to be automatically extended after a levy. It does not mean there is an automatic levy.

As set out above, the appellants make four (4) assignments of error, and this opinion addresses only one; the one concerning the tax levy. The appellants contend that if we answer another of the assignments of error they might obtain a refund of all taxes paid, and not just a refund of those paid since the filing of the complaints. The contention is without merit.

The three complaints filed in this consolidated case were filed in 1988. All three (3) allege that the taxpayers have paid taxes since 1985, but not one alleges facts which constitute an actual or threatened exercise of an immediate seizure of the taxpayers' land. The facts alleged do not, in law, constitute duress or compulsion. Thus, the taxes were voluntarily paid. The case of *Brunson* v. *Board of Directors of Crawford County Levee District*, 107 Ark. 24, 153 S.W. 828 (1913), is squarely in point, and dispositive of, this issue. In that case the taxpayer claimed his land was outside the district, that the taxes were illegal and wholly void, and that he was entitled to a refund of all taxes, even those paid before suit was filed. We wrote:

> Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party, at the time of making the payment, files a written protest, does not make the payment involuntary.

Under the present allegations, the taxpayers cannot collect refunds for taxes paid before the suits were filed even if those taxes are unconstitutional and illegal. *City of Little Rock* v.

*Cash*, 277 Ark. 494, 503, 644 S.W.2d 229 (1982).

Since the taxes were similarly voluntarily paid in this case, and since there can be no refund of taxes paid before suit was filed, there is no need to address the other assignments of error. We reverse the granting of summary judgment, reinstate the complaint, and remand for further proceedings.

PRICE, J., not participating.