The Honorable James McLean State Representative
20 Mill Run Trail Batesville, Arkansas 72501-6313
Dear Representative McLean:
You have requested my opinion regarding the Curia Creek Drainage District, which you note was created by special legislation in 1911.[1] As background for your request, you state:
 The law clearly states that the drainage district still exists pursuant to Act 279 of 1909 and Act 121 of 1911. According to A.C.A. § 14-121-301, the district may appoint new commissioners to replace those that are deceased. It is established in A.C.A. § 14-121-444 and § 14-121-445 that the district can collect taxes and borrow money to amortize the debt and resume maintenance on the levee and ditch to bring it up to operational standards set by the U.S. Army Corp of Engineers.
Against this backdrop, you ask:
 I would like to respectfully request your official opinion as to what is the step-by-step procedure for making the Curia Creek Drainage District operational after being dormant since the 1940's in accordance with all applicable laws. *Page 2 
RESPONSE
I cannot in the context of an Attorney General opinion identify a step-by-step procedure for making the Curia Creek Drainage District "operational" as this will likely depend upon a number of factual considerations that I am neither authorized nor equipped to evaluate. I can and will note as a general matter that your statement regarding the District's continued existence appears to accord with the general drainage district law. Additionally, you have correctly cited A.C.A. § 14-121-301 as the governing statute with regard to the appointment of drainage district commissioners, although it should be noted that vacancies are to be filled by appointment of the county court. As for resuming operations, the requisite procedure will probably depend upon a number of factors, including but not limited to the precise nature of the maintenance work that is contemplated. These are matters to be determined by the District's local counsel based upon the particular surrounding facts and circumstances.
DISCUSSION
Act 279 of 1909, referenced in your background statement, is the general law applicable to drainage districts.[2] As you have indicated, this general law applies to the Curia Creek Drainage District. This is by virtue of Act 227 of 1927, which made the general drainage district law applicable to districts created by special act:
 All drainage districts created by special acts are made drainage districts under Acts 1909, No. 279, with all the powers conferred by the latter and with all the liabilities and restrictions thereby imposed. However, nothing in this section shall be construed as taking away from any improvement district created by special acts any powers which are thereby conferred upon it, nor shall it displace any commissioners or directors of such districts now in office.[3] *Page 3 
As you have also correctly indicated, the general drainage district law provides for the continued existence of drainage districts:[4]
 The district shall not cease to exist upon the completion of its drainage system but shall continue to exist for the purpose of preserving the system, of keeping the ditches clear from obstruction, and of extending, widening, or deepening the ditches from time to time as may be found advantageous to the district.[5]
With regard to the appointment of new commissioners, you have correctly cited A.C.A. § 14-121-301, which is also part of the general drainage district law enacted under Act 279 of 1909. Pursuant to this statute, vacancies are to be filled by appointment of the county court.[6]
As for the specific procedures that will apply in making the Curia Creek Drainage District ("District") operational, this probably requires reference to both the general drainage district law and the special act creating the District. See
A.C.A. § 14-121-208, supra.[7] Beyond noting that consideration must be given to both the general drainage district law and the special act creating the District, I cannot in the context of this opinion identify a step-by-step procedure. I will note generally that different procedural requirements may come into play depending in some measure upon the nature of the proposed work.[8] But I cannot opine further, given *Page 4 
that I am not the District's counsel in the matter; nor can I engage in the necessary fact-finding to specifically identify the applicable procedure(s).[9]
While I therefore cannot definitively identify the step-by-step procedure for making the Curia Creek Drainage District operational, the above discussion may be of some assistance in framing the issues for review.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Acts 1911, No. 121.
[2] See Campbell v. Beaver Bayou Drainage Dist.,215 Ark. 187, 192, 219 S.W.2d 934 (1949). The general drainage district law is codified at A.C.A. § 14-121-101 et seq.
(Repl. 1998 and Supp. 2011).
[3]
Acts 1927, No. 227, § 1 (codified at A.C.A. § 14-121-208 (Repl. 1998)).See Berry v. Cousart Bayou Drainage District,181 Ark. 974, 977, 28 S.W.2d 1060 (1930), citing Winton v.Bartlett, 118 Ark. 669, 27 S.W.2d 100 (1930) (noting that "[d]rainage districts created by special acts are now drainage districts under Act 279 of the Acts of 1909 as amended.") See also Price v. DrainageDist. No. 17, 302 Ark. 64, 787 S.W.2d 660 (1990); Meador v.Warrington, 228 Ark. 297, 307 S.W.2d 75 (1957); Campbell v. BeaverBayou Drainage Dist., supra n. 2.
[4] This assumes that the drainage district has not been abolished pursuant to A.C.A. § 14-121-1010 (Supp. 2011), which authorizes the board of commissioners of any drainage district to petition the court in which the district was organized praying the court to abolish the district.
[5] A.C.A. § 14-121-412(a) (Repl. 1998); see Watson v.Drainage Dist. #3, 218 Ark. 361, 366, 236 S.W.2d 423 (1951) (noting that no statute of limitations bars the continued maintenance of a drainage district, citing the 1909 general drainage district provision, now codified as A.C.A. § 14-121-412).
[6] The statute provides for a petition by a majority in value of the owners of property in the district in order to have a particular person appointed. A.C.A. § 14-121-301(d) (Repl. 1998).
[7] See generally Price v. Drainage Dist. No. 17, supra n. 3;Berry v. Cousart Bayou Drainage District, supra n. 3;Meador v. Warrington, supra n. 3; Campbell v. Beaver BayouDrainage Dist., supra n. 2.
[8] E.g., Cox v. Drainage District No. 17,208 Ark. 755, 7581, 187 S.W.2d 887 (1945) (explaining the "two methods of procedure" for "doing further work after completion of the construction contemplated by the original plans. . . ."); Indian BayouDrainage District v. Dickie, 177 Ark. 728, 7 S.W.2d 794 (1928).See also Lesser-Goldman Cotton Co. v. Cache River,174 Ark. 160, 165-66, 294 S.W. 711 (1927) (noting A.C.A. § 14-121-412(a)'s declaration that "the district shall not cease to exist upon completion of its drainage system," but explaining that "[t]his does not preserve the district for any purpose other than expressly declared, and does not authorize the district to make a new or different improvement therein not in the nature of extending, widening or deepening the ditches already constructed, after the completion of the first one. . . .")
[9] You mentioned the Corps of Engineers in your question and this reference to the Corps suggests that it may be necessary to consider the possible applicability of A.C.A. § 14-120-701-705 (Repl. 1998), which addresses levee and drainage districts that have a duty to maintain facilities constructed by the Corps. You have provided no specific information to indicate these statutes are implicated, and I mention them only because of your reference to the Corps. *Page 1